APRIL L. HOLLINGSWORTH (Bar No. 9391)
**HOLLINGSWORTH LAW OFFICE, LLC**
1115 South 900 East
Salt Lake City, Utah 84105
Telephone: 801-415-9909
Fax: 801-303-7324
Counsel for Plaintiff

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **ADRIANA CLARK,**<br><br>Plaintiff,<br><br>vs.<br><br>**VIVINT SOLAR, INC.**,<br><br>Defendant. | **PLAINTIFF'S RESPONSES TO DEFENDANT'S FIRST SET OF INTEROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS**<br><br>Case No. 2:17-CV-00144<br><br>Judge Jill N. Parrish |

Plaintiff Adriana Clark hereby responds to Defendant's First Set of Interrogatories and Requests for Production of Documents.

# INTERROGATORIES

**INTERROGATORY NO. 1**: Provide a reasonably detailed description of every factual and legal basis that you allege gives rise to each of Plaintiff's claims and her damages.

**ANSWER:** Clark objects to this Interrogatory as being vague, ambiguous, and overly broad. Without waiving these objections, she responds that her claims are based on the following facts:

My claims generally are that I was paid less than market value for my position, whereas less qualified, less experienced men were hired into higher paid positions. This was a problem throughout the company, as women in all areas of the company were paid significantly less than men. Also, men in supervisory or management positions were given offices, whereas I and most other women at management level were not. After I complained about pay discrimination and asked for a raise, I was terminated, and such retaliation was also a problem throughout the company.

Some of the specific facts that support my claims were that I was promoted twice within the organization and never received an increase. I was told that the promotions were lateral moves. (I received pay increases during my tenure, but they were not associated with my promotions.) Per our Compensation Analyst, Hollie Cole, the base compensation for a HR Regional Manager should be around $100,524.00, with a bonus of $8,803.00 = total compensation of $109,327.00, and an HR Manager base compensation should be $98,660.00 with a bonus of $7,985.00 = total compensation of $106,645.00. I am aware of men in HR who were paid in this range. Yet I was paid $60,000 when hired and $69,300 at the time of my termination.

When I was promoted in September 2014, I began taking over the responsibilities of Scott Strong, who had been phased out of his job in HR. I took on all of Scott's responsibilities and 18 direct reports. Although he no longer came to work, Scott was still paid around $100,000 for many months. Then while I was an HR Manager, Tessa White brought in an HRBP (HR Business Partner), Anthony Allred, at double my salary even though he had no HR experience. I was managing a team and had direct reports, and I was over the entire East Cost of Vivint Solar. He had none of those responsibilities.

I provided Tessa White and Matthew Sadowski documentation supporting a raise in my compensation, which they denied me, in September 2014 and again in February 2015.

The discrimination against me was part of a pattern of discrimination against women generally in the company. For instance, Hollie Cole was the compensation manager, but she did not have an office and was paid significantly less than the male counter parts. She is the one who provided me with the information about the pay ranges and showed me the big discrepancies between the males


and female employees. She was also a witness to Matthew Sadowski making a comment about hiring an HR Generalist because "she is pretty and the field would like that."

Other examples of complaints and pay discrepancies between the male and female workers at Vivint Solar are:

- Bre Madsen – Manager over the Paralegals -- she did not have an office, and was paid less than men at her same level.
- Shawna Orlando – she was the supervisor in payroll, she was significantly underpaid, she brought the matter to Tessa White, VP of HR and nothing was done.
- Discrepancies between the executive admins:
  Chandra Christensen – was at $50,000.00 annual; when she left she was replaced by a male, Cameron Tanner, who was brought in at $65,000.00 annually, just a bit below my salary. (Plus, per labor laws this should have been an hourly position.)
    Olivia Kimberly was hired a month before Cameron Tanner, they only paid her $20.78 an hour = $43,222.40 annual.
    Brianne Lund was hired 10.15.12; she had 2 direct reports and was only paid $48,000.00 annually.

The retaliation against me was also part of a pattern.  I was terminated soon after I complained about pay in February 2015, and I believe several other women were also terminated or forced out after they complained.  For instance, Jamie Ursulich was a longtime employee, who worked in 1Stop, and supported the Sales team and later in HR.  She saw the big pay discrepancies between the male and female employees and was terminated after she complained.

**INTERROGATORY NO. 2:**  For each act or omission that you believe constitutes unlawful discrimination against you by Vivint and for which you seek relief in your Complaint:

    a.    Describe in detail what occurred and the date of the occurrence;

**ANSWER:**  Clark objects to this Interrogatory as being vague, ambiguous, and overly broad. Without waiving these objections, she responds:

In addition to the facts presented in response to Interrogatory No. 1, see attached chronology that I created while I worked at Vivint to document what I was experiencing (CLARK 332-335), and a document I created discussing my termination (CLARK 336-37).

    b.    Identify all people involved in the alleged conduct;

**ANSWER:**
Anthony Allred
Cameron Tanner
Matthew Sadowski

Steve Littlefield
Tessa White
Jeremy Sabin

      c.      Identify all witnesses to the alleged conduct;

**ANSWER:**
Bre Madsen
Shawna Orlando
Changra Christensen
Olivia Kimberly
Brianne Lund
Hollie Cole
Jamie Ursulich
Melody Henderson
Julie McGinn
Falakika Latu
Anne Howell
Lexi Liddiard
Meredith Mackris
Samila Paul Decaria

      d.      Describe in detail why you believe this conduct was an act of unlawful discrimination;

**ANSWER:** Unfair treatment and pay between male and female employees is illegal.

      e.      Identify all documents on which you intend to rely to support your claim for unlawful discrimination.

**ANSWER:** Clark objects to this Interrogatory as being premature, as she does not know what documents she will rely on to support her claims. She may use any document produced by either party in this litigation to support her claims.

3

**INTERROGATORY NO. 3**:   For each act or omission that you believe constitutes unlawful retaliation against you by Vivint and for which you seek relief in your Complaint:

      a.      Describe in detail what occurred and the date of the occurrence;

**ANSWER:**  Clark objects to this Interrogatory as being vague, ambiguous, and overly broad. Without waiving these objections, she responds:

Soon after I brought up the fact that I was underpaid in relation to my male coworker, I was told that I would lose my job.

      b.      Identify all people involved in the alleged conduct;

**ANSWER:**  Clark objects to this Interrogatory because she is likely not aware of the people who were involved in the retaliation against her (terminating her).  She believes the following people were involved:

Matthew Sadowski
Jeremy Sabin
Tessa White

      c.      Identify all witnesses to the alleged conduct;

**ANSWER:**  Clark objects to this Interrogatory because she is likely not aware of the people who were involved in (and therefore witnesses to) the retaliation against her (terminating her).

      d.      Describe in detail why you believe this conduct was an act of unlawful discrimination;

**ANSWER:**  Retaliation for complaining of unequal pay and discrimination is illegal.

      e.      Identify all documents on which you intend to rely to support your claim for unlawful discrimination.

**ANSWER:** Clark objects to this Interrogatory as being premature, as she does not know what documents she will rely on to support her claims.  She may use any document produced by either party in this litigation to support her claims.

**INTERROGATORY NO. 4**: Identify each male and/or Mormon Vivint employee whose salary you assert supports your Title VII discrimination and Equal Pay Act claims, and for each such person include:

 a. The supervisor of the male and/or Mormon Vivint employee;

 b. The job title(s) of the male and/or Mormon Vivint employee;

 c. The department in which the male and/or Mormon Vivint employee worked;
 d. The dates the male and/or Mormon Vivint employee worked for Vivint;

 e. The salary of the male and/or Mormon Vivint employee.

**ANSWER:** Anthony Allred – Human Capital Business Partner
Scott Strong -- Human Capital Director
Both worked in the Human Resources Department and were supervised by Tessa White. Scott Strong worked for Vivint before I started, and was phased out of his job in or about September 2014. He continued to be paid at his salary of $100,000/year for many months after he was no longer working. Anthony Allred was hired in February 2015 at $120,000/year.

**INTERROGATORY NO. 5**: Identify all current or former employees of Vivint with whom you had any communication about the allegations in the Complaint; and for each such person:

 a. Identify the date of such communication;

 b. Identify every writing or recording which embodies or relates in any way to such communication;

 c. Describe the nature of the specific communication with each person.

**ANSWER: ANSWER:** Clark objects to this Interrogatory as being vague, ambiguous, and overly broad. Without waiving these objections, she responds as follows:

I had multiple conversations with both Tessa White and Matthew Sadowski about pay, especially during merit increase and the two times I was promoted in September 2014 and February 2015. I gave them the benchmark data from Hollie Cole to show that I was underpaid, and also told them that I was aware of disparities in pay between male and female employees. I also spoke with Matthew about pay in December 2014. I asked him why I was only getting a 5% bonus, when all

5

==the male managers were getting a 10% bonus.  He did not answer my question.  He did tell me he could get me a 5% raise, which I told him I wanted to go to the women on my team because they were so underpaid.  I ended up getting the raise.==

I provided the documents labeled CLARK 44-46 and 338-340 to Tessa White and Matthew Sadowski.

I have also spoken with the following former employees about gender discrimination within the company (I do not know the dates of these conversations):
- Jamie Ursulich -- I spoke with her generally about the gender issues at the company after she and I were both terminated, and the fact that we both have claims against the company
- Bre Madsen - she confided in me while we were still employed that she had seen the disparities between male and female employees' pay, and I told her after we both left that I had filed a complaint
- Jackie Hodgson - I spoke to her after she was terminated from the company and let her know about my concerns about the company about pay and treatment of women
- Juliana Hegren - I spoke to her after we were both no longer employed with the company about my concerns about the company's treatment of women.

**INTERROGATORY NO. 6**: Identify each person who has been interviewed by Plaintiff or on behalf of Plaintiff in connection with this action; and for each such person:

  a. Identify the date of each communication or interview;

  b. Identify every writing or recording which embodies or relates in any way to each such communication or interview; and

  c. Describe the specific communication with each person or information provided by each such person.

**ANSWER:** Clark objects to this Interrogatory as being vague, ambiguous, and seeking information protected by the attorney-client and attorney work-product privilege.

**INTERROGATORY NO. 7**:   Identify every report, both written and oral, made by Plaintiff during her employment to Vivint concerning the allegations in the Complaint. For each report:

  a. Describe the nature of the incident(s) giving rise to the report;

  b. Identify the date of each report;

    c.      Identify the person within Vivint to whom Plaintiff made the report;

    d.      Identify the content of the report;

    e.      Identify every writing or recording relating in any way to the report.

**ANSWER:** Clark objects to this Interrogatory as being vague and ambiguous. Without waiving these objections, she responds:

I complained about my pay, and the disparities in pay between men and women in the company, to Tessa White and Matthew Sadowski in September 2014 and February 2015 (I do not know the exact dates). I initiated the September conversation because I was given a promotion with no pay increase, and I provided Tessa and Matthew with the document labeled CLARK 340 at that time.

I initiated the February 2015 conversation for two reasons: 1) Anthony Allred was brought on and I knew how more he was being paid than I was (and I knew he had no HR background), and 2) I was promoted to HR Regional Manager, with no pay increase. I gave Tessa and Matthew the Mercer Data document I had received from Hollie Cole. See CLARK 338-39.

I spoke to Matthew Sadowski in December 2014 as well, as described in response to Interrogatory No. 5, because I was seeing more and more inconsistencies in pay.

**INTERROGATORY NO. 8**: Following the termination of your employment at Vivint, describe in detail all efforts you made to obtain employment, including:

    a.      All efforts at self-employment and the results of those efforts;

**ANSWER:** Clark objects to this Interrogatory as being vague, ambiguous, and overly broad. Without waiving these objections, she responds:

I took whatever opportunity was available, because I had a small child and family I needed to support. My very first job after Vivint Solar was at Myriad Genetics at $65,000 a year. Not only was the compensation below what I was making but my commute was an hour and a half each way. Dates of employment were 5/15 – 2/16. I was then able to find employment at Westminster College for a short time at $67,000 a year, but it was very difficult and my schedule was not flexible. Dates of employment were 2/16-6/16. I am currently in Thyssenkrupp Elevator, where I have been able to find steady employment. My start date here was 8/16 – current.

    b.      All efforts you made to identify job openings for which you were qualified, and identify all documents describing or related to these efforts; and

**ANSWER:** Clark objects to this Interrogatory as being vague, ambiguous, and overly broad. Without waiving these objections, she responds:

7

I am very active on LinkedIn and have used my professional connections to find employment. Documents labeled CLARK 464-481 show many of my attempts to find work.

       c.       Identify all employers with whom you submitted a job application and for each employer include:

              i.       The date of your application submission;

              ii.      The position applied for;

              iii.     The outcome of the application;

              iv.     The reasons known to you for the outcome; and

              v.      All documents related to your application.

**ANSWER:** Clark objects to this Interrogatory as being overly broad. Without waiving this objection, she provides the following information regarding applications she submitted:

Applied - April 1, 2015
Human Resource Manager
Industry Plant, UT #2659 through InDeed - I had an interview

Applied April 7, 2015
HR Business Partner
Fran Hume @ Health Catalyst - I had an interview

Applied - April 8, 2015
ADP Position - HR Support
Michael Rasmussen

Applied - April 8, 2015
Flsmidth - Stephanie Burton
Sr. HR Business Partner

Applied - April 16, 2015
HR Benefits Manager at UTA

Applied - April 16, 2015
Contacted Brooke Clark at Prince Perelson letting her know I was looking for employment, they are a recruiter. I also had an interview with Prince Perelson to be a recruiter for them.

April 17, 2015
Spoke to Anne Howell at Search Group letting her know I was looking for employment. I had worked with Anne Howell at Vivint Solar.

8

Applied - April 20, 2015
Mobility and Immigration Specialist
Mr. Driggs via LinkedIn

Applied - April 20, 2015
Employment Coordinator
Heritage Rtc.
Anneta Conder

Applied - April 21, 2015
Benefits Coordinator
Myriad Genetics
I had an interview, was made an offer, and accepted it - as an HR Generalist making $65,000/yr.

      d.      Identify all employers with whom you interviewed for a job position and for each

employer include:

           i.      The date of that interview;
          ii.      The position interviewed for;
         iii.      The identity of the person who interviewed you;
         iv.      The outcome of the interview;
          v.      The reasons known to you for the outcome; and
         vi.      All documents related to your interview.

**ANSWER:** See Response to 8.c.

**INTERROGATORY NO. 9**: To the extent your efforts described in response to Interrogatory No. 9 led to employment, please describe that employment, including:

      a.      The dates of each employment with each employer;

      b.      The position in which you were employed;

      c.      The job duties associated with your position;

      d.      Whether the position was part-time or full-time;

      e.      The hours per week you worked; and

      f.      All elements of you compensation, including wages, salary, bonuses, benefits, etc.

**ANSWER:** See Response to 8.

**INTERROGATORY NO. 10**: For each type of damages you claim against Vivint in this matter, provide the following:

a. Describe in detail the nature and total amount of all such damage and each and every element of all such damage;

**ANSWER:** The total amount of Clark's cannot be determined precisely because her damages are continuing. However, she asserts that she was underpaid compared to her male counterparts by at least $51,000 per year, plus an additional 5% bonus (men were paid 10% bonus, but she was only paid 5% bonus). Therefore, she estimates her damages for the two years prior to her termination at $107,000. Further, as she was terminated in retaliation for complaining about pay inequities and is now earning around $60,000, her economic damages are continuing at a rate of at least $60,000/per year[1], totaling over $180,000 to date post-termination (for a total of over $287,000). She also seeks emotional distress damages, which cannot be quantified, and will be for the jury to determine.

b. Describe how you calculated the amount of each type of claimed damage;

**ANSWER:** The calculations listed are simple addition and subtraction assuming pay for a male in her position at Vivint at $120,000 versus her pay at $69,000, and her subsequent salary of $60,000, without any adjustments for raises.

c. Identify all individuals with knowledge of or in possession of any information concerning each type of claimed damages and summarize the substance of such knowledge or information;

**ANSWER:** Clark objects to this Interrogatory as being vague, ambiguous, and overly broad. Without waiving these objections, she responds: I am the person most familiar with my economic and emotional distress damages.

d. Identify all documents that discuss, concern, reflect, or are in any way related to each type of damage you claim, clearly showing which document is related to which type of claimed damages;

**ANSWER:** Clark objects to this Interrogatory as being vague, ambiguous, and overly broad.

---

[1] This corrects the damages calculations included in her Initial Disclosures.

10

Without waiving these objections, she responds that all of the documents she has produced in this litigation relate in some way to her damages.

    e.    Identify each document you will or may use at trial in support of each of your claims

**ANSWER:** Clark objects to this Interrogatory as being premature, as she does not know what documents she will or may use to support her claims at trial. She may use any document produced by either party in this litigation to support her claims, but will abide by the pretrial deadlines set by the court or governed by the rules.

    **INTERROGATORY NO. 11**: Identify each health care professional, mental health care provider, counselor, or advisor from whom you sought counseling or treatment of any type as a result of any mental health or emotional issue in the past ten years, and for each such person:

    a.  Describe the nature of the treatment, counsel, or advice rendered to you;

    b.  State the dates and times of the treatment;

    c.  Identify all documents related to or resulting from that counseling or treatment.

**ANSWER:** Clark objects to this Interrogatory as being overly broad in temporal scope. Without waiving this objection, she responds as follows:

I have been seeing my primary physician, Dr. Robin Mainwaring (ph: 801-262-9800), for approximately 10 years. Approximately six months after my termination from Vivint Solar, she upped my dosage of anti-anxiety and depression medication because of the distress I was feeling due to the events that took place at Vivint Solar.

# REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1:** Produce all documents identified in, related to, or relied on in your response to Interrogatories Nos. 1-11. For documents produced, please specifically identify the Interrogatory to which it pertains.

**ANSWER:** Clark objects to this Request as being vague, ambiguous, and overly broad. Without waiving these objections, in addition to her Initial Disclosures, she produces CLARK 119-481.

**REQUEST FOR PRODUCTION NO. 2:** Produce all documents that are or were the property of Vivint or that were removed from Vivint's premises, including but not limited to its physical premises and computer systems.

**ANSWER:** Clark objects to this Request as being vague and ambiguous. Without waiving these objections, in addition to her Initial Disclosures, see CLARK 119-454.

**REQUEST FOR PRODUCTION NO. 3:** Produce all documents you submitted to the U.S. Equal Employment Opportunity Commission regarding your allegations in the Complaint.

**ANSWER:** See CLARK 418-452.

**REQUEST FOR PRODUCTION NO. 4:** Produce all documents relating to your employment with Vivint including but not limited to all offer letters, contracts, agreements, memoranda, policies, handbooks, performance reviews, performance improvement plans, warnings, disciplinary actions, termination notices, resignation letters, notations, notes, and any complaint or reports of discrimination, retaliation, or violations of the Equal Pay Act made to or about Vivint.

**ANSWER:** Clark objects to this Request as being vague, ambiguous, and overly broad. Without waiving these objections, in addition to her Initial Disclosures, she produces CLARK 119-481.

**REQUEST FOR PRODUCTION NO. 5:** Produce all documents related to or concerning your claims of money damages, including but not limited to:

a. Your federal and state income tax returns, including all related schedules, exhibits, attachments and documents, including all Internal Revenue Service Forms 1099 and W-2, for the years 2013 through the present.

b. All documents, including but not limited to paycheck stubs, relating to or concerning all sources of income you have had between November 2013 and the date you respond to these requests.

**ANSWER:** Clark objects to this Request as being overly broad; the information regarding her income since her termination from Vivint can be shown through less intrusive means. Without waiving these objections, in addition to her Initial Disclosures, she produces her W2s from 2014 to present. See CLARK 456-463.

**REQUEST FOR PRODUCTION NO. 6:** Produce all documents that support your claimed damages, and specifically identify the particular type of damages to which each document pertains.

**ANSWER:** Clark objects to this Request as being vague, ambiguous, and overly broad. Without waiving these objections, in addition to her Initial Disclosures, she produces CLARK 119-481.

**REQUEST FOR PRODUCTION NO. 7:** Produce all documents, including notes taken by you, relating to, concerning or constituting statements rendered by persons contacted or spoken to in connection with this matter.

**ANSWER:** Clark objects to this Request as being vague, ambiguous, and seeking information protected by the attorney-client and attorney work-product privilege. Clark does not possess any non-privileged documents.

**REQUEST FOR PRODUCTION NO. 8:** Produce all diaries, journals, letters, appointment books, or calendars maintained or kept by you from November 1, 2013 through the date of your responses to these discovery requests.

**ANSWER:** See CLARK 332-337.

**As to objections:**

DATED this  21st  day of May, 2018.

                              **HOLLINGSWORTH LAW OFFICE, LLC**

                              /s/ April L. Hollingsworth
                              APRIL L. HOLLINGSWORTH
                              Attorney for Plaintiff

## CERTIFICATE OF SERVICE

      I hereby certify that on the 21st day of May, 2018, a copy of the foregoing **INITIAL DISCLOSURES** was served via electronic mail to:

Susan Baird Motschiedler
Derek Langton
PARSONS BEHLE & LATIMER
201 South Main Street, Suite 1800
Salt Lake City, UT  84111


                         /s/ April L. Hollingsworth
                        APRIL L. HOLLINGSWORTH